**Steven KENDALL, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 49A05–0707–PC–391.

Court of Appeals of Indiana.

May 9, 2008.

ous inclusion of the word "and" after the second subsection of (b)).

Susan K. Carpenter, Public Defender of Indiana, Victoria Christ, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Steven Kendall appeals the post-conviction court's denial of his Petition for Post–Conviction Relief. Kendall raises one issue on appeal, which we restate as follows: whether Kendall received ineffective assistance of appellate counsel.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On May 16, 2001, the State charged Kendall with attempted murder, aggravated battery, and two counts of unlawful possession of a firearm by a serious violent felon. On February 25 through 27, 2002, a jury trial was held, and on February 27, the jury found Kendall guilty of attempted

murder[1] as a Class A felony and aggravated battery[2] as a Class B felony. At the sentencing hearing, the trial court merged the aggravated battery conviction with the attempted murder conviction and sentenced Kendall to thirty years.

Kendall appealed his conviction, and on June 17, 2003, this court affirmed Kendall's aggravated battery conviction, vacated the attempted murder conviction, and remanded this cause to the trial court for resentencing on Count II, aggravated battery, a Class B felony. *Kendall v. State,* 790 N.E.2d 122 (Ind.Ct.App.2003), *trans. denied.* On December 3, 2003, a sentencing hearing was held. The trial court noted the following aggravating factors: (1) Kendall was released on bond at the time he committed the instant offense; (2) the nature and circumstances of the crime were heinous; (3) Kendall was in need of correctional treatment best provided by commitment to a penal facility; and (4) a reduced sentence would depreciate the seriousness of the offense. The trial court did not identify any mitigating factors. The trial court then sentenced Kendall to twenty years in the Department of Correction, the maximum sentence for a Class B felony.

On December 29, 2003, Kendall appealed his sentence pursuant to Indiana Appellate Rule 7(B). Kendall filed his brief on April 28, 2004, and the State filed its brief on May 26, 2004. On June 24, 2004, the United States Supreme Court issued *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Approximately six weeks later on August 3, 2004, we affirmed Kendall's sentence. *Kendall v. State,* 813 N.E.2d 449 (Ind.Ct. App.2004). Kendall did not file a petition for rehearing with our court, nor did he file a petition for transfer to the Indiana

Supreme Court. This failure, Kendall claims, is where his appellant counsel was ineffective.

On February 10, 2005, Kendall filed a Petition for Post–Conviction Relief. On August 7, 2006, Kendall filed an Amended Petition for Post–Conviction Relief. On October 18, 2006, and March 14, 2007, the post-conviction court held hearings on Kendall's Petition. On May 21, 2007, the post-conviction court issued its conclusions, which state in pertinent part:

> Specifically, [Kendall] claims that his appellate counsel was ineffective in failing to present an argument that [Kendall's] sentence violated the [United States] Supreme Court decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied* 542 U.S. 961, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004).

> [Kendall] raises a fairly narrow issue of law, wherein it is very important to be aware of the exact sequence of events in the process of [Kendall's] appeal, and in the development of Indiana case law surrounding *Blakely.* [Kendall] filed his Notice of Appeal with the Indiana Court of Appeals on December 29, 2003. [Kendall] filed his appellant's brief on April 28, 2004, and the State filed its appellee's brief on May 26, 2004. The Court of Appeals decided [Kendall's] direct appeal on August 3, 2004. Less than six weeks prior to the Court of Appeals['] decision, on June 24, 2004, the United States Supreme Court issued *Blakely.* Seven months after the Court of Appeals decision on his appeal, on March 9, 2005, the Indiana Supreme Court decided *Smylie v. State,* 823 N.E.2d 679 (Ind.2005), which applied *Blakely* and held that portions of

---

**1.** *See* IC 35–41–5–1; IC 35–42–1–1.

**2.** *See* IC 35–42–2–1.5.

Indiana's sentencing scheme violated a defendant's right to trial by jury.

The *Smylie* court concluded it would be "appropriate to be rather liberal in approaching whether an appellant and his lawyer have adequately preserved and raised a *Blakely* issue." [*Smylie*,] 823 N.E.2d at 690. Subsequently, [our] Supreme Court explained it had:

> [R]elaxed the rule that a particular sentencing claim must be raised in an appellant's initial brief on direct appeal in order to receive review on the merits. For cases in which the appellant's initial brief on direct appeal was filed prior to the date of the *Smylie* decision (March 9, 2005), an appellant who had contested his or her sentence in some respect in the appellant's initial brief on direct appeal is entitled to review on the merits of a subsequently-raised *Blakely* [sic] claim. (The keys here are that (1) some sentencing claim must have been raised in the appellant's initial brief on direct appeal and (2) the appellant must have added a *Blakely* claim by amendment, on petition for rehearing, or on petition to transfer.)
>
> *Kincaid v. State*, 837 N.E.2d 1008, 1010 (Ind.2005) (internal citations and footnote omitted).

Under the liberal approach set forth by our Indiana Supreme Court, seven months after the appellate decision herein, it appears [Kendall] could have added a *Blakely* claim in an amendment to his [Appellant's] brief, or in a petition for rehearing or petition to transfer. However, [Kendall] filed no amendments, and requested neither rehearing nor transfer, to add a *Blakely* claim. Accordingly, applying the inescapable logic of *Smylie* and its progeny, [Kendall] has forfeited his challenge under *Blakely*. ("The keys here are that . . . the appel-

lant must have added a *Blakely* claim by amendment, on petition for rehearing, or on petition to transfer.").

Stemming from this waiver of a potential *Blakely* issue, [Kendall] argues he was denied effective assistance of counsel. When analyzing claims based on a failure to raise issues on appeal, courts must be especially deferential to counsel's decision, because deciding which issues to raise "is one of the most important strategic decisions to be made by appellate counsel." *Bieghler v. State[,]* 690 N.E.2d 188, 193 (Ind.[ ] 1997). [Kendall] must demonstrate "from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy." *Ben–Yisrayl v. State,* 738 N.E.2d 253, 260–61 (Ind.2000), *cert. denied[,]* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002) (internal citations omitted). In addition to being significant and obvious, the unraised issues must be "clearly stronger" than the issues counsel raised. *Bieghler,* 690 N.E.2d at 194.

Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Fisher v. State,* 810 N.E.2d 674, 677 (Ind.2004); *Bieghler,* 690 N.E.2d at 193–95. The failure to amend, or seek rehearing or transfer in this case resulted in forfeiture of [Kendall's] *Blakely* claim and, accordingly, the claim should be evaluated as a waiver of issues. Specifically, this [c]ourt must determine whether challenging [Kendall's] sentence under *Blakely* was a significant and obvious issue at the time. Under the facts of this case, this court concludes that it was not.

In deciding what is sufficient to preserve a *Blakely* claim, our Indiana Supreme Court has stated:

> Because *Blakely* represents a new rule that was sufficiently novel that it would not have been generally predicted, much less envisioned to invalidate part of Indiana's sentencing structure, requiring a defendant or counsel to have prognosticated the outcome of *Blakely* or of today's decision would be unjust ...[. A] trial lawyer or an appellate lawyer would not be ineffective for proceeding without adding a *Blakely* claim before *Blakely* was decided.

*Smylie*, 823 N.E.2d at 689, 690.

An attorney is not required to anticipate changes in the law and object accordingly in order to be effective. *Id.* at 690. Issues raised for the first time on rehearing or transfer are usually considered waived. *Carson v. State*, 813 N.E.2d 1187, 1188–89 (Ind.Ct.App.2004). Applying this to the case at bar, based on long standing appellate precedent, it was reasonable for counsel to presume a claim raised for the first time on rehearing or transfer would be waived. Particularly in the case of *Blakely*, great confusion reigned for some time following the opinion. The *Smylie* court recognized the confusion that ensued in Footnote 12, stating, in part: "That so many states are wrestling with the meaning of *Blakely* is further evidence of its unpredictability and a further indication that reasonable lawyers would not have known of the outcome." [*Smylie*, 823 N.E.2d at 687.] Consequently, appellate counsel was not ineffective for failing to anticipate our Indiana Supreme Court's decision in *Smylie* and its course of liberal *Blakely*-claim preservation, and

therefore [Kendall] has not met his burden on this issue.

*Appellant's* Br. at 15–20.

Kendall now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

■ Kendall claims he was denied effective assistance of appellate counsel in violation of his rights under the United States Constitution and the Indiana Constitution. In particular, he contends his appellate counsel was deficient for failing to file an amended brief, a petition for rehearing, or a petition for transfer in order to raise a *Blakely* claim.

■ Post-conviction hearings do not afford defendants the opportunity for a "super appeal." *Moffitt v. State*, 817 N.E.2d 239, 248 (Ind.Ct.App.2004). The petitioner has the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *see also id.* Because Kendall is appealing from a negative judgment, to the extent his appeal turns on factual issues, he must provide evidence that as a whole unerringly and unmistakably leads us to believe there is no way within the law that a post-conviction court could have denied his post-conviction relief petition. *See Stevens v. State*, 770 N.E.2d 739, 745 (Ind.2002), *cert. denied* 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56. It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law. *Godby v. State*, 809 N.E.2d 480, 482 (Ind.Ct.App. 2004), *trans. denied.*

■ The standard by which we review claims of ineffective assistance of appellate counsel is the same standard applicable to claims of ineffectiveness of trial

counsel. *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind.1997). *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established that the defendant must prove (1) his or her counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's failure to meet prevailing professional norms, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind.Ct.App.2005), *trans. denied* (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). Essentially, the defendant must show that appellate counsel was deficient in his or her performance and that deficiency resulted in prejudice. *Johnson*, 832 N.E.2d at 1006. Because all criminal defense attorneys will not agree on the most effective way to represent a client, "isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Bieghler*, 690 N.E.2d at 199; *Davis v. State*, 598 N.E.2d 1041, 1051 (Ind.1992); *Ingram v. State*, 508 N.E.2d 805, 808 (Ind.1987). Further, " 'appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in the existing law.' " *Walker v. State*, 843 N.E.2d 50, 60 (Ind.Ct.App.2006) (quoting *Trueblood v. State*, 715 N.E.2d 1242, 1258 (Ind.1999)). Thus, there is a strong presumption that counsel rendered adequate assistance and used professional judgment. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind.2001).

Kendall contends his appellate counsel was ineffective because her performance fell below an objective standard of reasonableness when she failed to file an amended brief, petition for rehearing, or petition for transfer to add a claim that the trial court violated his Sixth Amendment rights as decided by the United States Supreme Court in *Blakely* while his appeal was pending.

■ When an ineffective assistance of appellant counsel claim involves failure to raise an issue, and that failure results in waiver, our Supreme Court has set forth a two-part test to determine whether counsel performance was ineffective. *Bieghler*, 690 N.E.2d at 193. First, the issue must be significant and obvious and a failure to raise it cannot be explained by any reasonable strategy. *Ben–Yisrayl v. State*, 738 N.E.2d 253, 260–61 (Ind.2000), *cert. denied*, 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002) (internal citations omitted). Second, it must be "clearly stronger" than all of the other issues that counsel raised. *Bieghler*, 690 N.E.2d at 193.[3]

In order for Kendall to establish a violation of his constitutional right to effective assistance of counsel, he must first demonstrate that filing an amended brief or other pleading to raise *Blakely* issues was within counsel's objective standard of reasonable performance. *See Johnson*, 832 N.E.2d at 996 (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). Based on *stare decisis* and the confusion following *Blakely* and its progeny, we find the standard argued by Kendall to be outside counsel's objective prevailing professional norms. Instead, at the time of Kendall's appeal, raising *Blakely* issues was only a subjec-

---

**3.** Kendall did not cite this standard of review for reviewing the issue of whether his appellant counsel was effective. A strict reading of our appellate rules would render this standard waived and the more deferential standard cited by Kendall would apply. Ind. Appellate Rule 46(A)(8)(b). Given that a flood of post-conviction claims involving ineffective assistance of appellate counsel in a *Blakely* context is at the mercy of this and other decisions, we address Kendall's argument under the most defendant friendly standard used by our Supreme Court.

tive standard of reasonable performance. Since that time it has proven to be an objective standard that is of no avail to Kendall.

On the direct appeal of his sentence, Kendall argued that the trial court improperly applied aggravating factors to enhance his sentence, and that his sentence was inappropriate in light of the nature of his offense and his character. After Kendall's appeal was fully briefed, on June 24, 2004, the United States Supreme Court issued its decision in *Blakely*. On August 3, 2004, we affirmed Kendall's conviction and sentence in an unpublished memorandum decision. The earliest decision from this court holding that *Blakely* applied in Indiana's sentencing scheme came over two months later on October 20, 2004, in *Krebs v. State*, 816 N.E.2d 469 (Ind.Ct. App.2004). In *Krebs*, we *sua sponte* raised the issue of whether the trial court's finding of aggravating factors without the assistance of a jury violated Krebs's Sixth Amendment rights. *Id.* at 474.

On March 9, 2005, our Supreme Court issued its decision in *Smylie v. State*, 823 N.E.2d 679 (Ind.2005), holding that Indiana's sentencing scheme violated "the Sixth Amendment right to trial by jury, and that the new rule of *Blakely* should apply to all cases pending on direct review at the time *Blakely* was announced in which the appellant has adequately preserved appellate review of the sentence." *Id.* at 681–82. The *Smylie* court stated that to receive the benefit of a new rule of law, a claimant must preserve the issue for appeal. *Id.* at 688 (citing *Pirnat v. State*, 607 N.E.2d 973, 974 (Ind.1993)). In explaining how an issue is typically preserved, the *Smylie* court referred to *Coleman v. State*, 558 N.E.2d 1059 (Ind.1990),

which considered the retroactive applicability of the constitutional rule announced in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989).[4] Our Supreme Court concluded that *Booth* and *Gathers* applied retroactively to cases pending on direct appeal, "*so long as the appellant has preserved [the issue for appeal] by objecting at trial.*" *Smylie*, 823 N.E.2d at 688 (quoting *Coleman*, 558 N.E.2d at 1061) (emphasis in original).

Despite this typical requirement for preserving issues, the *Smylie* court concluded that "[b]ecause *Blakely* represents a new rule that was sufficiently novel that it would not have been generally predicted, much less envisioned to invalidate part of Indiana's sentencing structure, requiring a defendant or counsel to have prognosticated the outcome of *Blakely* or of today's decision would be unjust." *Smylie*, 823 N.E.2d at 689. Our Supreme Court summarized by stating,

> First, as a new rule of constitutional procedure, we will apply *Blakely* retroactively to all cases on direct review at the time *Blakely* was announced. Second, a defendant need not have objected at trial in order to raise a *Blakely* claim on appeal inasmuch as not raising a *Blakely* claim before its issuance would fall within the range of effective lawyering.

*Id.* at 690–691.

On November 9, 2005, in *Kincaid v. State*, 837 N.E.2d 1008, 1010 (Ind.2005), our Supreme Court clarified that any appellant who filed their initial brief prior to *Smylie* and failed to raise a *Blakely* claim, but nonetheless challenged their sentence

---

4. Both *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) were overruled by *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

in some form, could raise a *Blakely* claim by way of amendment, petition for rehearing, or petition for transfer. The *Kincaid* court made this pronouncement despite the fact that Kincaid had actually raised a *Blakely* claim in his initial appellate brief. *Id.*

When the Supreme Court decided *Blakely* on June 24, 2004, Kendall's case was fully briefed in this court. Our opinion was handed down on August 3, 2004. Typical procedure for this court would have been to circulate the draft opinion for votes and comments on July 13, 2004—at least three weeks prior to the hand down date. Thus, appellate counsel would have had a maximum of twelve working days to read and analyze *Blakely* and seek to file an amended brief or twenty-seven working days to seek rehearing.

Moreover, there is no indication that trial counsel had made any request for a jury at sentencing under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) or had objected to the sentencing procedure in any way. Thus, counsel would have had to seek to amend the brief or seek rehearing on a matter on which the legal issue had not been preserved. Indeed, competent appellate counsel could well have concluded that the issue was not properly preserved and was waived. It was not until our Supreme Court decided *Smylie* on March 9, 2005 that the question regarding the preservation of a *Blakely* issue was resolved. And,

it was not until eight months later in *Kincaid*, that our Supreme Court ruled that a defendant like Kendall, who had generally challenged his sentence on appeal, was entitled to an appellate amendment to preserve a *Blakely* claim. *Kincaid*, 837 N.E.2d at 1010.

In *Smylie*, issued one year and four months after Kendall was sentenced and more than ten months after his appellate brief was filed, our Supreme Court for the first time directly addressed *Blakely's* application to Indiana's sentencing scheme and held the scheme was invalid, at least to the extent that it permitted judges to enhance sentences above the presumptive based on facts neither admitted by the defendant nor proven to a jury. *Smylie*, 823 N.E.2d at 683–84. *Smylie* also addressed whether the defendant there had waived his argument regarding *Blakely* because he had failed to lodge a Sixth Amendment objection to his sentencing procedures. Our Supreme Court concluded there was no waiver or forfeiture of this argument and held, "a defendant need not have objected at trial in order to raise a *Blakely* claim on appeal inasmuch as not raising a *Blakely* claim before its issuance would fall within the range of effective lawyering." *Id.* at 691. The Supreme Court also stated that "requiring a defendant or counsel to have prognosticated the outcome of *Blakely* or of *today's decision* would be unjust." *Id.* at 689 (emphasis added).[5]

---

**5.** The dissent suggests that Kendall's appellate counsel's failure to raise Kendall's right to a *Blakely* issue evidenced her ineffectiveness, and that Indiana's generally liberal application of *Blakely* raises the effectiveness standard. *See Tr.* at 18–19, 20. As to the first contention, the issue is not whether Kendall could have raised a *Blakely* issue, but instead, the issue is whether raising a *Blakely* issue was within a reasonable standard of effective assistance, and, if so, whether Kendall's coun-

sel provided that assistance. Borrowing our Supreme Court's language as used by the post-conviction court and as mentioned above, we too find the issue "sufficiently novel" so as not to hold our bar, at the time of Kendall's appeal, to an objective standard requiring it to amend appeals to raise such *Blakely* issues. *Smylie*, 823 N.E.2d at 689. As to the second argument, Indiana's liberal interpretation of *Blakely* does not retroactively define counsel's effectiveness standard.

Given the legal environment of the time, an environment marked by unpredictability and uncertainty on this court and elsewhere regarding the application of *Blakely*, we do not find that counsel was ineffective for failing to seek leave to file an amended brief or to raise the issue on rehearing or petition to transfer. We commend the post-conviction court for its clear and thoughtful entry.[6]

Affirmed.

MAY, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting with separate opinion.

I respectfully dissent. First, our supreme court has established a liberal approach permitting defendants with *Blakely* claims, whose counsels otherwise would have waived those claims under prior Indiana legal precedent, opportunity to litigate their claims; and secondly, when Kendall's counsel's performance is compared to the diligent work of other attorneys representing clients similarly situated with arguable *Blakely* claims, it is apparent that Kendall's counsel's performance fell below prevailing professional norms. I would conclude that fairness requires we find Kendall's appellate counsel ineffective in this situation.

That being said, having reviewed the timeline of Kendall's direct appeal, and compared it to the progression of Indiana case law applying *Blakely*, I can understand the reasoning relied upon by the post-conviction court and now the majority to determine that Kendall's appellate counsel was not ineffective. Typically, appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in the existing law. *Concepcion v. State*, 796 N.E.2d 1256, 1260 (Ind.Ct.App.2003), *trans. denied*. At the time when Kendall's counsel chose not to attempt to raise a *Blakely* claim by way of amendment, petition for rehearing, or petition for transfer, the existing law included the requirement of preservation of issue by objection at the defendant's trial. *See Smylie*, 823 N.E.2d at 688. Further, the existing law was that issues raised for the first time on rehearing or transfer are usually considered waived. *Carson v. State*, 813 N.E.2d 1187, 1188–89 (Ind.Ct.App.2004).

However, our supreme court has held that the typical procedural considerations do not apply to this period of time between *Blakely* and *Smylie*. *See Kincaid v. State*, 837 N.E.2d 1008, 1010 (Ind.2005). For example, comparing our supreme court's decisions in *Smylie* and *Kincaid* to federal decisions, it is apparent that our state has chosen a more liberal course in providing opportunity for defendants to raise *Blake-*

Specifically, while *Smylie* allowed defendants to raise *Blakely* issues on direct appeal, or on amended appeal, without a trial objection, contrary to federal courts (*United States v. Booker*, 543 U.S. 220, 268, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)), *Smylie* did not retroactively apply a reasonableness standard to counsel's performance.

**6.** Judge Richard Kopf, United States District Judge for the District of Nebraska, spoke for many of us recently when he wrote:

There are a lot of really good, hard-working people "in the field" plus tens of thousands

of defendants who deserved far better than the seven years of "water boarding" that ensued between *Apprendi* and *Gall*.

Richard G. Kopf, *The Top Ten Things I Learned from* Apprendi, Blakely, Booker, Rita, Kimbrough *and* Gall, OSJCL AMICI: Views From the Field (January 2008), at http://osjcl. blogspot.com. The above quotation is number one on Judge Kopf's list. We commend all ten to those who have struggled to apply *Apprendi* and its progeny during the last few years.

ly claims. In *United States v. Booker*, 543 U.S. 220, 268, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the federal counterpart to *Blakely* wherein the Supreme Court held that the Sixth Amendment as construed by *Blakely* applied to the federal sentencing guidelines, the Supreme Court acknowledged its prior precedent from *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), requiring application of its remedial interpretation of the sentencing guidelines to all cases on direct review. However, the Booker Court explained further that, "we expect reviewing courts to apply ordinary prudential doctrines, determining for example, whether the issue was raised below." *Id.*

In its own application of *Blakely* to petitioners' claims in *Pasquantino v. United States*, 544 U.S. 349, 372 n. 14, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005), the Supreme Court refused to consider an argument that *Blakely* applied because the "[p]etitioners did not raise [the] claim before the [c]ourt of [a]ppeals or in their petition for certiorari." The Supreme Court reached this ruling in spite of the fact that the petitioners had filed the petition for certiorari before the issuance of *Blakely*. *See id.* at 377 n. 5, 125 S.Ct. 1766 (Ginsburg, J., dissenting).

The Eleventh Circuit Court of Appeals has taken a firm stance that *Blakely* and *Booker* issues not raised in an initial brief will not be considered, in keeping with its "prudential rule." *United States v. Higdon*, 418 F.3d 1136, 1137 (11th Cir.2005); *see also United States v. Levy*, 391 F.3d 1327, 1328 (11th Cir.2004). The Fifth Circuit Court of Appeals reconsidered an appeal of a sentence in light of *Booker* after instruction to do so on remand from the Supreme Court but, nonetheless required the appellant to show a possibility of injustice so grave as to warrant disregard of

usual procedural rules because the appellant had not raised the *Booker* claim before filing his petition for certiorari. *United States v. Ogle*, 415 F.3d 382, 384 (5th Cir.2005). Finding no such showing by the appellant, the *Ogle* court declined to consider the merits of Ogle's *Booker* challenge. *Id.*

I gather from our supreme court's more liberal stance on providing opportunity for appellants to raise *Blakely* claims, that our consideration of Kendall's post-conviction proceedings should be influenced by the same liberal considerations. Moreover, I believe that the proper way to analyze Kendall's counsel's effectiveness here is to determine whether "her performance fell below an objective standard of reasonableness based on prevailing professional norms." *Johnson v. State*, 832 N.E.2d 985, 996 (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). I conclude that the proper method to determine professional norms in this instance is by comparison of Kendall's counsel's performance to the performance of other counsel representing Indiana appellants with ongoing direct appeals after the issuance of the *Blakely* decision prior to our supreme court's decision in *Smylie*.

A review of published opinions considering *Blakely* challenges reveals multiple appellants who raised *Blakely* claims via amended briefs that were filed, not only prior to *Smylie*, but also prior to our initial application of *Blakely* to Indiana's sentencing scheme in *Krebs* on October 20, 2004. In *Strong v. State*, 817 N.E.2d 256 (Ind.Ct. App.2004), *affirmed on reh'g, trans. denied*, over the State's arguments that Strong had waived any *Blakely* claim by failing to object before the trial court, we considered Strong's claim that his Sixth Amendment rights had been violated. Strong's appellate counsel filed his initial brief prior to the issuance of *Blakely*.[7]

---

7. Online docket, case no., 49A02–0401–CR– 25, http://hats.courts.state.in.us/ISC3RUS/ISC

Thereafter, on July 27, 2004, Strong's counsel sought and received permission to file an amended brief.[8] In *Traylor v. State*, 817 N.E.2d 611 (Ind.Ct.App.2004), *trans. denied*, Traylor's counsel filed the initial appellate brief well before the decision in *Blakely*.[9] Then on July 27, 2004, our court granted Traylor permission to file his amended brief to discuss the applicability of *Blakely*.[10] Again, in *Trusley v. State*, 829 N.E.2d 923, 927 (Ind.2005), our supreme court remanded the case to the trial court because of three aggravating factors relied upon to enhance Trusley's sentence, "none ... [could] be supported by facts found according to the procedural dictates mandated by *Blakely*." *Id.* In our prior decision, which was vacated by our supreme court's consideration on transfer, we explained that "Trusley's brief was submitted in May of 2004, before *Blakely* was decided. She moved to amend her brief so she could address *Blakely*, and we granted her motion." *Trusley v. State*, 818 N.E.2d 110, 111 n. 5 (Ind.Ct.App.2004), *trans. granted, opinion vacated*. Once more, in *Teeters v. State*, 817 N.E.2d 275 (Ind.Ct. App.2004), *trans. denied*, Teeters' counsel filed his initial brief prior to the Court's decision in *Blakely*.[11] Thereafter, on July 28, 2004, her counsel sought permission to submit an amended brief, which was granted on August 6, 2004.[12] Ultimately, Teeters' *Blakely* claim was unsuccessful on its merits, but nonetheless, her counsel sought and was granted permission to pursue a *Blakely* claim although it had not been raised in Teeters' initial brief. Finally, in *Riehle v. State*, 823 N.E.2d 287 (Ind. Ct.App.2005), *trans. denied*, the initial appellant's brief was filed on June 8, 2004, and Riehle's counsel sought permission to file an amended brief on July 22, 2004, which was granted on August 24, 2004.[13] Over the State's objection that Riehle had waived his *Blakely* claims, we concluded that the trial court had impermissibly found four aggravators that should have been submitted to a jury. *Riehle*, 823 N.E.2d at 298.

There were also several appellants who raised *Blakely* claims via petitions for rehearing that were filed before our decision in *Krebs*. In *Wickliff v. State*, 816 N.E.2d 1165, 1166 (Ind.Ct.App.2004), *decision on reh'g*, we considered Wickliff's *Blakely* claim, which was raised for the first time in a Petition for Rehearing filed on August 16, 2004.[14] In *Carson v. State*, 813 N.E.2d 1187, 1189 (Ind.Ct.App.2004), *decision on reh'g*, we considered Carson's *Blakely* claim on its merits despite the fact that we found Carson had technically waived his *Blakely* claim by not making any challenge to his sentence on direct appeal. Carson's counsel pursued the *Blakely* claim in his Petition for Rehearing filed July 12, 2004, more than two months prior to our deci-

2search.jsp, reviewed April 2, 2008.

8. *Id.*

9. Online docket, case no., 63A04–0309–CR– 466, http://hats.courts.state.in.us/ISC3RUS/ ISC2detail.jspQrow=0, reviewed April 2, 2008.

10. *Id.*

11. Online docket, case no., 69A01–0312–CR– 487, http://hats.courts.state.in.us/ISC3RUS/

ISC2detail.jsp?row=0, reviewed April 2, 2008.

12. *Id.*

13. Online docket, case no., 15A05–0311–CR– 00557, http://hats.courts.state.in.us/ISC3RUS/ ISC2detail.jsp?row=0, reviewed April 2, 2008.

14. Online docket, case no, 41A01–0401–CR– 27, http://hats.courts.state.in.us/ISC3RUS/ISC 2detail.jsp?row=0, reviewed April 11, 2008.

sion in *Krebs*.[15] Again in *Cowens v. State*, 817 N.E.2d 255 (Ind.Ct.App.2004), *decision on reh'g*, Cowens' counsel raised his *Blakely* claim for the first time in his Petition for Rehearing filed on July 21, 2004.[16] Cowens' *Blakely* claim was unsuccessful, but was considered on its merits due to the diligence of his counsel. *Id.* Once more, in *Aguilar v. State*, 820 N.E.2d 762, 763 (Ind. Ct.App.2005), *decision on reh'g, trans. granted, and opinion vacated by Aguilar v. State*, 827 N.E.2d 31 (Ind.2005), *cert. denied*, 547 U.S. 1058, 126 S.Ct. 1660, 164 L.Ed.2d 403 (2006), Aguilar's counsel argued for the first time on rehearing that Aguilar's Sixth Amendment rights, as announced in *Blakely*, had been violated. We agreed and remanded to the trial court for resentencing. Our initial opinion had been issued on July 9, 2004, and Aguilar filed his Petition for Rehearing on July 19, 2004.[17] However, our supreme court concluded that Aguilar had waived his *Blakely* claim, because unlike Kendall, Aguilar had not appealed his sentence in any way prior to petitioning for rehearing. *Aguilar*, 827 N.E.2d at 32

In addition, a review of published opinions reveals that several appellants argued *Blakely* claims in their initial appellant's briefs filed prior to, not only *Smylie*, but also *Krebs*, although no objection had been made before the trial court to preserve the error as typically required. *See Williams v. State*, 818 N.E.2d 970 (Ind.Ct.App.2004), *trans. granted, opinion vacated by Williams v. State*, 838 N.E.2d 1019 (Ind. 2005);[18] *Milligan v. State*, 819 N.E.2d 115 (Ind.Ct.App.2004);[19] *Ryle v. State*, 819 N.E.2d 119 (Ind.Ct.App.2004), *trans. granted, opinion vacated by Ryle v. State*, 842 N.E.2d 320 (Ind.2005);[20] *Patrick v. State*, 819 N.E.2d 840 (Ind.Ct.App.2004), *trans. granted, opinion affirmed in part, vacated in part by Patrick v. State*, 827 N.E.2d 30 (Ind.2005);[21] *Mitchell v. State*, 821 N.E.2d 390 (Ind.Ct.App.2004), *trans. granted, opinion vacated by Mitchell v. State*, 844 N.E.2d 88 (Ind.2006);[22] *Goldsberry v. State*, 821 N.E.2d 447 (Ind.Ct.App. 2005);[23] *Pennington v. State*, 821 N.E.2d

**15.** Online docket, case no., 49A04–0310–CR– 494, http://hats.courts.state.in.us/ISC3RUS/ ISC2detail.jep?row=0, reviewed April 2, 2008.

**16.** Online docket, case no., 01A02–0312–CR– 01048, http://hats.courts.state.in.us/ISC3RUS/ ISC2detail.jsp?row=0, reviewed April 2, 2008.

**17.** Online docket, case no., 49A05–0307–CR– 370, http://hats.courts.state.in.us/ISC3RUS/ ISC2detail.jsp?row=9, reviewed April 2, 2008.

**18.** Williams filed his initial appellant's brief on July 6, 2004. Online docket, case no., 49A02–0402–CR–114, http://hats.courts.state. in.us/ISC3RUS/ISC2detail.jsp?row=3, reviewed April 11, 2008.

**19.** Milligan filed his initial appellant's brief on July 26,204. Online docket, case no., 14A05– 0403–CR–166, http://hats.courts.state.in.us/ ISC3RUS/ISC2detail.jep?row=0, reviewed April 11, 2008.

**20.** Ryle filed his initial appellant's brief on September 10, 2004. Online docket, case no., 49A02–0405–CR–423, http://hats.courts.state. in.us/ISC3RUS/ISC2detail.jsp?row=12, reviewed April 11, 2008.

**21.** Patrick filed his initial appellant's brief on August 30, 2004. Online docket, case no., 71A03–0407–CR–312, http://hats.courts.state. in.us/ISC3RUS/ISC2detail.jep?row=0, reviewed April 11, 2008.

**22.** Mitchell filed his initial appellant's brief on July 16, 2004. Online docket, case no., 49A05–0312–CR–625, http://hats.courts.state. in.us/ISC3RUS/ISC2detail.jsp?row=2, reviewed April 11, 2008.

**23.** Goldsberry filed his initial appellant's brief on July 27, 2004. Online docket, case no., 40A05–0404–CR–204, http://hats.courts.state. in.us/ISC3RUS/ISC2detail.jsp?row=0, reviewed April 11, 2008.

899 (Ind.Ct.App.2005); [24] *Stott v. State*, 822 N.E.2d 176 (Ind.Ct.App.2005); [25] *Padilla v. State*, 822 N.E.2d 288 (2005); [26] *McNew v. State*, 822 N.E.2d 1078 (Ind.Ct.App. 2005); [27] *Edwards v. State*, 822 N.E.2d 1106 (Ind.Ct.App.2005).[28] In addition, in *Berry v. State*, 819 N.E.2d 443 (Ind.Ct. App.2004),[29] Berry advanced an argument that his *Blakely* rights had been violated, although I cannot ascertain from the opinion whether an objection had preserved the issue before the trial court. That being said, I would doubt that such an objection was made.

Moreover, in *Smylie*, Smylie did not raise a *Blakely* claim in his initial appellate brief. The Supreme Court's decision in *Blakely* was not issued until after we had denied Smylie's Petition for Rehearing on June 15, 2005.[30] Thus, it is apparent that Smylie did not raise his *Blakely* claim until he filed his petition seeking transfer to our supreme court on July 15, 2004, months prior to our opinion in *Krebs*.

Regrettably, I must admit that time constraints prevent me from broadening my search to determine, for example, how many appellants presented arguments of *Blakely* violations · on appeal without hav-

ing objected before the trial court by filing briefs sometime between the issuance of *Krebs*, on October 20, 2004, and our supreme court's decision in *Smylie* on March 9, 2005. Nor have I searched our memorandum decisions to determine how many appellants whose appeals did not result in published opinions presented arguments of *Blakely* violations during relevant time periods. However, I am convinced from the results of my searches that a significant number of additional appellants presented such arguments prior to *Smylie*. I conclude that the abundance of other counsel advancing *Blakely* claims prior to our judiciary's application of *Blakely* to Indiana's sentencing scheme represents the prevailing professional norm at the time when Kendall's appellate counsel chose not to advance a *Blakely* claim on his behalf. *See Johnson*, 832 N.E.2d at 996. Moreover, the plethora of counsel raising *Blakely* claims during this time period also speaks for the significance and obviousness of the issue during this time period. *See Ben–Yisrayl v. State*, 738 N.E.2d 253, 261 (Ind. 2000). These recognitions, combined with our supreme court's stance that liberal opportunity must be given appellants to allow for consideration of *Blakely* . viola-

---

**24.** Pennington filed his initial appellant's brief on July 23, 2004. Online docket, case no., 49A02–0404–CR–309, http://hats.courts.state. in.us/ISC3RUS/ISC2detail.jsp?row=4, reviewed April 11, 2008.

**25.** Stott filed his initial appellant's brief on September 16, 2004. Online docket, case no., 49A04–0405–CR–285, http;//hats.courts.state. in.us/ISC3RUS/ISC2detail.jsp?row=5, reviewed April 11, 2008.

**26.** Padilla filed his initial appellant's brief on August 23, 2004. Online docket, case no., 49A04–0404–CR–308, http://hats.courts.state. in.us/ISC3RUS/ISC2detail.jsp?row=3, reviewed April 11, 2008.

**27.** McNew filed his initial appellant's brief on August 6, 2004. Online docket, case no.,

73A01–0404–CR–176, http://hats.courts.state. in.us/ISC3RUS/ISC2detail.jsp?row=0, reviewed April 11, 2008.

**28.** Edwards filed his initial appellant's brief on July 14, 2004. Online docket, case no., 49A05–0401–CR–61, http://hats.courts.state. in.us/ISC3RUS/ISC2detail.jsp?row=7, reviewed April 11, 2008.

**29.** Berry filed his initial appellant's brief on July 26, 2004. Online docket, case no., 49A04–0402–CR–122, http://hats.courts.state. in.us/ISC3RUS/ISC2detail.jsp?row=9, reviewed April 11, 2008.

**30.** Online docket, case no., 41A01–0309–CR–339, http://hats.courts.state.in.us/ISC3RUS/ ISC2detail.jsp?row=0, reviewed April 2, 2008.

tions, lead me to conclude that Kendall's appellate counsel's performance fell below the objective standard of reasonableness. *See Johnson*, 832 N.E.2d at 996. Fairness simply demands such a result.

I also would conclude that Kendall suffered prejudice caused by his appellate counsel's deficient performance. When considering aggravating factors to be used to enhance Kendall's sentence, the trial court determined that Kendall was in need of correctional or rehabilitative treatment best provided by a penal facility based on its review of Kendall's criminal history, which included the trial court's reference to two prior arrests of Kendall that did not result in convictions. It was improper for the trial court to rely upon Kendall's prior arrests that did not result in conviction without a finding by a jury or an admission by Kendall. *See Duncan v. State*, 857 N.E.2d 955, 959 (Ind.2006) (citing *Blakely*, 542 U.S. at 301, 124 S.Ct. 2531). Additionally, the trial court's findings of the nature and circumstances of Kendall's crime violated *Blakely*. *See Marshall v. State*, 832 N.E.2d 615, 622–23 (Ind.Ct.App.2005), *trans. denied.* "Where the use of some aggravators violates *Blakely* and others do not, we will remand for resentencing unless we can say with confidence that the trial court would have imposed the same sentence if it considered only the proper aggravators." *Robertson v. State*, 871 N.E.2d 280, 287 (Ind.2007). Here, I would remand for resentencing. Accordingly, I would conclude that there is a reasonable probability that, but for counsel's failure to meet prevailing professional norms, the result of the proceeding would have been different. *Johnson*, 832 N.E.2d at 996.

For these reasons, I respectfully dissent.