## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 31 2015, 9:31 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Kelly A. Kelly
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremy Ryan,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

March 31, 2015

Court of Appeals Case No. 20A03-1408-PC-293

Appeal from the Elkhart Superior Court 3

The Honorable George W. Biddlecome, Judge

Case No. 20D03-1304-PC-29

**Mathias, Judge.**

[1] The Elkhart Superior Court denied a petition for post-conviction relief filed by Jeremy Ryan ("Ryan"). Ryan appeals, claiming that the post-conviction court clearly erred in rejecting Ryan's claims that his plea of guilty to Class A felony manufacturing methamphetamine was not knowingly, voluntarily, and intelligently made and that he received the ineffective assistance of trial counsel. Concluding that the post-conviction court's decision was not clearly erroneous, we affirm.

## Facts and Procedural History

[2] On November 21, 2009, the police responded to a call of a domestic disturbance at a home where Ryan lived with his girlfriend and her two children. When the police searched the home, they found various items associated with the manufacture and use of methamphetamine, including one vessel with a liquid that contained methamphetamine and the methamphetamine precursors ephedrine or pseudoephedrine.

[3] As a result, the State charged Ryan on November 24, 2009, with Class A felony dealing in methamphetamine in an amount of three grams or more, two counts of Class C felony neglect of a dependent, Class D felony domestic battery, Class D felony strangulation, and Class A misdemeanor interfering with the reporting of a crime.

[4] Ryan was appointed counsel and reached an agreement with the State on March 3, 2010, whereby he agreed to plead guilty to Class A felony dealing in methamphetamine and two counts of Class C felony neglect of a dependent. In

exchange, the remaining charges would be dismissed, and Ryan's sentence would be capped at thirty-five years. A plea hearing was held on March 4, 2010, at which Ryan was advised of his rights. Ryan indicated that he knew and understood his rights, and that he understood the terms of his plea agreement. Ryan, under oath, admitted to knowingly manufacturing more than three grams of methamphetamine. The trial court accepted the plea agreement and sentenced Ryan to thirty-five years on the Class A felony conviction, with twenty-five years executed and ten years suspended to probation, and two concurrent sentences of five years each on the Class C felony convictions, to be served concurrently with the sentence on the Class A felony.

[5]     On April 15, 2013, Ryan filed a *pro se* petition for post-conviction relief. After the Indiana Public Defender's office filed an appearance for Ryan, he filed an amended petition on December 2, 2013. In this petition, Ryan claimed that his plea was not knowingly, intelligently, and voluntarily entered because he was misled by his trial counsel with regard to whether the State could have proved that he manufactured more than three grams of methamphetamine. Along these same lines, Ryan also claimed that his trial counsel was ineffective for failing to properly advise him that he had a defense to the Class A felony charge, i.e., that the State could not have proved that he manufactured more than three grams of methamphetamine.

[6]     The trial court held an evidentiary hearing on Ryan's post-conviction petition on March 4, 2014. At the hearing, Ryan called as a witness Indiana State Laboratory chemist Kimberly Ivanyo ("Ivanyo"), who had analyzed the

evidence submitted by the police in Ryan's case. Of the two vials of liquid submitted by the police, one contained methamphetamine and the precursor ephedrine/pseudoephedrine. Ivanyo explained that she did not weigh the liquid in the vial because the laboratory measures liquids by volume, not weight. She also explained a conversion formula exists that can theoretically calculate the weight of solid methamphetamine that could be obtained from a liquid containing methamphetamine but that she did not use such a formula in Ryan's case.

[7] Ryan also called as a witness his trial counsel, who did not recall any specific discussion of the weight of the methamphetamine discovered by the police. He did, however, remember that Ryan had been very cooperative with the police, showing them where the various items were as they searched his residence. Ryan had also admitted to his counsel that he had been manufacturing methamphetamine. Ryan's trial counsel recalled that he and Ryan agreed that a plea agreement was in Ryan's best interest.

[8] Ryan himself testified at the post-conviction hearing that he did not know how much methamphetamine the police had discovered at his home but that he believed the State had sufficient evidence to convict him based upon the advice of his trial counsel. Ryan also testified that he believed that he was facing a sentence of up to seventy-eight years and pleaded guilty to avoid such a lengthy possible sentence. Ryan further stated that he learned in 2012, years after his conviction, about a conversion formula that can be used to calculate the weight of solid methamphetamine that could be obtained from a liquid containing

methamphetamine. He also learned of recent developments in case law that he thought would have made the State's case against him difficult to prove, thus motivating his petition for post-conviction relief.

[9] On July 29, 2014, the post-conviction court issued findings of fact and conclusions of law denying Ryan's petition. The court determined that, at the time of Ryan's plea, the State did not have to prove the amount of solid methamphetamine and that the case law relied upon by Ryan was handed down two years after his conviction and sentence. The post-conviction court therefore determined that Ryan had not shown that his plea was not knowingly, involuntarily, and intelligently made. The court further determined that Ryan's trial counsel was not ineffective based on the state of the law at the time of Ryan's plea. Ryan now appeals.

## Post-Conviction Standard of Review

[10] Post-conviction proceedings are not "super appeals" through which a convicted person can raise issues he did not raise at trial or on direct appeal. *Fowler v. State*, 977 N.E.2d 464, 466 (Ind. Ct. App. 2012), *aff'd on reh'g*, 981 N.E.2d 623 (Ind. Ct. App. 2013). Instead, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Id*. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. *Id*. When a petitioner appeals the denial of post-conviction relief, he appeals from a negative judgment. *Id*. Consequently, we may not reverse unless the petitioner demonstrates the evidence as a whole

leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to its conclusions of law. *Id.*

## I. Voluntariness of Ryan's Plea

Ryan first claims that the post-conviction court erred in determining that Ryan's plea of guilty was entered knowingly, voluntarily, and intelligently. Before accepting a guilty plea, a trial court must determine that the defendant understands the nature of the charges to which he is pleading, that the plea will waive certain rights, and the range of penalties he faces. *See* Ind. Code § 35-35-1-2. These statutory requirements ensure that the guilty plea "represents a voluntary and intelligent choice." *Diaz v. State*, 934 N.E.2d 1089, 1094 (Ind. 2010). "[P]ost-conviction relief is a proper vehicle for challenging a guilty plea, and we look at all evidence before the post-conviction court that supports its determination that a guilty plea was voluntary, knowing, and intelligent." *Collins v. State*, 14 N.E.3d 80, 85 (Ind. Ct. App. 2014). In this context, voluntariness is dependent "on whether the defendant knowingly and freely entered the plea[.]" *State v. Moore*, 678 N.E.2d 1258, 1266 (Ind. 1997).

Here, Ryan does not claim that the trial court misadvised him or failed to advise him regarding any of his rights. Instead, he claims that his plea was based on incorrect information regarding the evidence the State had against him, i.e., that the State could not prove the quantity of the methamphetamine

he manufactured sufficient to support a Class A felony, i.e., three grams. *See* Ind. Code § 35-48-4-1.1(b) (2008).

[13] Ryan argues, "[b]ecause the State did not provide direct evidence for the weight of methamphetamine, an essential element of dealing as a Class A felony, it cannot show Ryan manufactured three grams or more of methamphetamine." Appellant's Br. p. 10. However, Ryan did not proceed to trial; he instead pleaded guilty. Thus, the State was not required to present any evidence, as Ryan admitted that he manufactured more than three grams of methamphetamine.

[14] Ryan argues, however, that his admission was based on incorrect information and advice given to him by his trial counsel. Specifically, Ryan notes no significant amount of solid methamphetamine was found at his home and that the methamphetamine in the intermediate liquid mixture found at his home was not weighed. He therefore claims that the State had insufficient evidence to convict him of a Class A felony and that his trial counsel was ineffective for advising him to the contrary.

[15] Ryan notes that our supreme court has held that, "in order to prove the element of weight of drugs or controlled substances, the State must either offer evidence of its actual, measured weight or demonstrate that the quantity of the drugs or controlled substances is so large as to permit a reasonable inference that the element of weight has been established." *Halsema v. State*, 823 N.E.2d 668, 674 (Ind. 2005). However, the statute criminalizing the manufacture of

methamphetamine criminalizes the manufacture of methamphetamine "pure or adulterated." I.C. § 35-48-4-1.1(a). At the time of Ryan's guilty plea, this court had repeatedly held that, when determining the amount of the drug involved, an intermediate mixture that contained the final drug was an "adulterated" drug. *See Hundley v. State*, 951 N.E.2d 575, 581 (Ind. Ct. App. 2011) (holding that where the intermediate step is so near the end of the manufacturing process that the final product is present in the chemical compound, that substance qualifies as an "adulterated drug" for purposes of our manufacturing statutes), *trans. denied*; *Traylor v. State*, 817 N.E.2d 611, 620 (Ind. Ct. App. 2004) (holding that evidence was sufficient to establish that defendant possessed over three grams of methamphetamine where evidence showed that defendant was in the process of producing methamphetamine, and the product in the reaction vessel weighed well over three grams), *trans. denied*.

[16] The case Ryan relies on, *Buelna v. State*, 20 N.E.3d 137 (Ind. 2014), disagreed with this approach. In *Buelna*, the defendant was convicted of Class A felony dealing in methamphetamine and, on appeal, challenged the sufficiency of the evidence supporting his conviction, specifically the sufficiency of the evidence used to support the finding that he possessed more than three grams of methamphetamine. On appeal, this court observed that the liquid sample taken from the vessels recovered from the defendant contained some methamphetamine, and we therefore held the entire liquid mixture constituted "adulterated" methamphetamine. *Buelna v. State*, No. 20A04-1305-CR-223,

2014 WL 345994 (Ind. Ct. App. Jan. 30, 2014), *trans. granted, opinion vacated* (citing *Traylor*, 817 N.E.2d at 620).

[17] On transfer, our supreme court disagreed with our holdings in *Buelna*, *Traylor,* and *Hundley* and held that "adulterated" methamphetamine is the "final, extracted product that may contain lingering impurities or has been subsequently debased or diluted by a foreign substance—not an intermediate mixture that has not undergone the entire manufacturing process." *Buelna*, 20 N.E.3d at 142. Thus, the weight of an intermediate mixture, such as the liquid in the containers in *Buelna*, "is probative of the weight enhancement only if the State presents evidence that establishes how much finished drug the intermediate mixture would have yielded if the manufacturing process had been completed." *Id.* In so holding, the court abrogated the earlier holdings of this court in *Hundley* and *Traylor.*

[18] Here, Ryan claims that the State would have been unable to prove how much finished methamphetamine his intermediate mixture would have yielded had the manufacturing process been completed. Because his trial counsel advised him otherwise, Ryan claims, his plea of guilty was not knowingly, voluntarily, and intelligently entered. We disagree.

[19] At the time Ryan entered into his plea agreement, our supreme court had not yet issued *Buelna*; in fact, *Buelna* was issued over four and one-half years after Ryan pleaded guilty.[1] Accordingly, at the time of Ryan's plea, *Hundley* and

---

[1] Ryan pleaded guilty on March 3, 2010; *Buelna* was not handed down until November 13, 2014.

*Traylor* were still good law, and the State could have used the entire weight of the liquid containing methamphetamine to prove that he manufactured more than three grams of adulterated methamphetamine. Thus, at the time that Ryan entered his plea, the advice of his trial counsel was not incorrect, and we reject Ryan's claim that his decision to plead guilty was not knowingly, voluntarily, and intelligently made. *See Fowler*, 977 N.E.2d at 467-68 (rejecting defendant's claim that his plea was not voluntary and intelligent because he was not advised of change in case law that did not occur until after defendant had pleaded guilty and was sentenced), *aff'd on reh'g*, 981 N.E.2d 623 (Ind. Ct. App. 2013).

## II. Ineffective Assistance of Counsel

[20] Ryan also claims that his trial counsel was constitutionally ineffective for failing to inform him that the State did not have enough evidence to prove the weight of the methamphetamine Ryan had manufactured. In *Timberlake v. State*, our supreme court set forth the standard governing claims of ineffective assistance of trial counsel:

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the *Strickland* test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

[21] Claims of ineffective assistance of trial counsel following a guilty plea require certain other considerations. With regard to guilty pleas, two general types of claims of ineffective assistance of trial counsel are accepted: (1) the failure to advise the defendant on an issue that impairs or overlooks a defense, and (2) an incorrect advisement of penal consequences. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied* (citing *Segura v. State*, 749 N.E.2d 496, 500 (Ind. 2001). Ryan's claim appears to fall within the first of these categories.

[22] In *Segura*, the court also explained what a petitioner must establish on a claim of ineffective assistance of trial counsel following a guilty plea:

> We conclude that *Hill* [*v. Lockhart*, 474 U.S. 52 (1985)] . . . requires a showing of a reasonable probability of success at trial if the alleged error is one that would have affected a defense. This result seems preferable for several reasons. In [*State v.*] *Van*

> *Cleave*, [674 N.E.2d 1293 (Ind. 1996),] we identified sound reasons for requiring that a petitioner who pleads guilty show a reasonable probability of acquittal in order to prevail in a postconviction attack on the conviction based on a claim of ineffective assistance of counsel. As *Hill* emphasized, the State has an interest in the finality of guilty pleas. This is in part grounded in the cost of a new trial, and the demands on judicial resources that are imposed by revisiting the guilty plea, but also in concerns about the toll a retrial exacts from victims and witnesses who are required to revisit the crime years later.

*Segura*, 749 N.E.2d at 503 (citations omitted). Our supreme court therefore concluded that "[a] new trial is of course necessary if an unreliable plea has been accepted. But its costs should not be imposed needlessly, and that would be the result if the petitioner cannot show a reasonable probability that the ultimate result—conviction—would not have occurred despite counsel's error as to a defense." *Id*. Thus, contrary to Ryan's claims,[2] to be successful in his claim of ineffective assistance of trial counsel, he had to prove to the post-conviction court that, but for his counsel's alleged errors, he would not have been convicted. *See id.*

[23] Turning now to the merits of Ryan's claim of ineffective assistance of trial counsel, the crux of Ryan's argument is again that the State possessed

---

[2] Ryan claims that we should follow the federal Seventh Circuit Court of Appeals, which disagreed with our supreme court's interpretation of *Hill*, and concluded that "a person who contends that ineffective assistance of counsel induced him to plead guilty establishes 'prejudice' by demonstrating that, but for counsel's errors, he would have insisted on a trial." *See Manzano*, 12 N.E.3d at 326 n.1 (citing *Payne v. Brown*, 662 F.3d 825, 828 (7th Cir. 2011)). However, the Indiana Supreme Court has determined that *Hill* requires a defendant to show more than that he would not have pleaded guilty and instead must show that but for counsel's errors, he would not have been convicted. *Segura*, 749 N.E.2d at 503. Because the Seventh Circuit's decisions on federal law are not binding on us, we apply the standard established by our supreme court. *See Manzano*, 12 N.E.3d at 326 n.1 (citing *Jackson*, 830 N.E.2d at 921).

insufficient evidence to convict him of manufacturing methamphetamine in a quantity of three grams or more and that his trial counsel was ineffective for failing to inform Ryan of this deficit in the State's evidence. Ryan contends that, because the State could not prove the amount of methamphetamine involved, the most he could have been convicted of was a Class B felony, not the Class A felony to which his trial counsel advised him to plead guilty.[3]

[24] In support of this claim, Ryan again relies extensively on the holding of our supreme court in *Buelna* to argue that the State had no evidence regarding the weight of the solid methamphetamine that could have been produced from the liquid containing methamphetamine and precursors found at Ryan's home. We repeat, however, at the time of Ryan's guilty plea, over four and one-half years before *Buelna*, this court had held that the State could use the entire weight of the liquid containing methamphetamine to establish the weight of "adulterated" methamphetamine. *See Hundley v. State*, 951 N.E.2d at 581; *Traylor*, 817 N.E.2d at 620.

[25] Thus, the advice of Ryan's trial counsel was not incorrect at the time it was given. Nor can we fault his trial counsel for failing to anticipate our supreme

---

[3] Ryan also claims that the other pending charges would have been considered part of a single episode of criminal conduct, thereby limiting his total sentence to thirty years. *See* Appellant's Br. p. 12-13. In his petition for post-conviction relief, however, Ryan did not present a claim of ineffective assistance of trial counsel based on the failure of his counsel to advise him that the charges might be considered a single episode of criminal conduct. We therefore will not consider this as a separate claim of ineffective assistance of trial counsel. *See Hollowell v. State*, 19 N.E.3d 263, 270 (Ind. 2014) (noting that court on appeal will not consider claim not presented in petition for post-conviction relief). Furthermore, Ryan cites no authority and provides no analysis supporting his position that his convictions would have been considered a single episode of criminal conduct. *See Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) (noting that a party waives an issue for purposes of appeal where the party fails to develop a cogent argument or provide adequate citation to authority), *trans. denied*.

court's holding in *Buelna*. *See Kendall v. State*, 886 N.E.2d 48, 52 (Ind. Ct. App. 2008) (noting that an attorney is not required to anticipate changes in the law in order to be effective).

[26] Ryan claims that *Buelna* does not represent a change in the case law because the State has always been required to prove the weight of the drug involved. *See Halsema*, 823 N.E.2d at 674. He therefore argues that no proof of the weight of the methamphetamine is at issue here because the State Laboratory chemist testified that she did not weigh the liquid and did not use a conversion formula to determine how much solid methamphetamine could be produced from the liquid found at Ryan's home.

[27] However, this does not mean that had Ryan elected to go to trial, the State could not have weighed the liquid, which at the time could have been considered "adulterated" methamphetamine.[4] *See Traylor*, 817 N.E.2d at 620. Given that three grams is an extremely small quantity,[5] it was not unreasonable for Ryan's trial counsel to advise him that the State could have convicted him of a Class A felony at that time.[6]

---

[4] The fact that Ivanyo testified that the laboratory does not weigh liquids and that liquids are typically measured by volume instead of weight does not mean that liquids cannot be weighed. *See Traylor*, 817 N.E.2d at 619 (noting that State's forensic scientist determined that liquid in a reaction vessel weighed 23.72 grams).

[5] Three grams is equivalent to 0.1058 ounce, or 0.0066 pound. *See* Lewis V. Judson, Weights and Measures of the United States (1976), available at: http://physics.nist.gov/Pubs/SP447/sp447.pdf; *see also Com. v. Montoya*, 984 N.E.2d 793, 801 (Mass. 2013) (citing Alschuler, *The Failure of Sentencing Guidelines: A Plea for Less Aggregation*, 58 U. Chi. L. Rev. 901, 937 (1991) (noting that five grams is weight of two pennies or five paper clips)).

[6] We have been unable to find any exhibit in the record before us that demonstrates precisely how much methamphetamine-containing liquid was in the vessel found in Ryan's home. However, based on the

[28] We emphasize that it was not the State's burden at the post-conviction hearing to show it had sufficient evidence to convict Ryan; it was Ryan's burden on post-conviction to show that his counsel was ineffective. Given the evidence that the State possessed, which included one vial of a liquid containing methamphetamine, and the state of the law at the time of Ryan's plea, we cannot say that Ryan's counsel was ineffective for advising Ryan to plead guilty.

## Conclusion

[29] The post-conviction court did not err in concluding that Ryan failed to establish that his plea was not knowingly, voluntarily, and intelligently made. Similarly, the post-conviction court did not err in concluding that Ryan failed to establish that he received the ineffective assistance of trial counsel.

[30] Affirmed.

Najam, J., and Bradford, J., concur.

---

testimony, it appears that it was much more than 0.6 teaspoon, which is the approximate volume of three grams of water. *See Commonly Used Metric System Units*, available at: http://lamar.colostate.edu/~hillger/common.html.