**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 03 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOSEPH M. CLEARY**
Collignon & Dietrick
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GREGORY FOSTER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1107-PC-398 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D04-0604-PC-51

**May 3, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Gregory Foster (Foster), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

## ISSUES

Foster raises three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the post-conviction court erred in finding that he received the effective assistance of counsel; and

(2) Whether the post-conviction court erred in denying his petition for post-conviction relief despite Foster's claim of newly discovered evidence.

## FACTS AND PROCEDURAL HISTORY

In *Foster v. State*, 795 N.E.2d 1078, 1082-84 (Ind. Ct. App. 2003), *trans. denied.*, we outlined the facts of this case as follows:

> On November 18, 2000, at approximately 3:00 a.m., S.J. was walking from her apartment to visit a friend. S.J. lived in the Eden Green Apartments in Fort Wayne, Indiana. As S.J. walked down the street, Foster drove by in a white Toyota Camry, and called out the name "Diane," thinking that S.J. was her aunt. S.J. informed Foster that she was not Diane and told him her first name. Foster offered S.J. a ride because it was late at night and she was walking alone. S.J. accepted the ride and entered the car. Once S.J. entered the car, Foster drove in the opposite direction of S.J.'s intended destination.
> As a result, S.J. informed Foster that he was going in the wrong direction. Foster told S.J. that he had to take care of some business first and encouraged her to calm down. At this point, S.J. became worried, but she was not scared. However, S.J. asked Foster several times to stop in order to

2

let her out of the car. Foster ignored her requests and continued to drive to the Canterbury Green Apartments, on the other side of town. Foster parked in a carport and left the car for about five minutes. S.J. testified that she remained in the car for the following reasons: (1) it was late, (2) she did not know the area, (3) it was dark, and (4) mostly white people, who she did not think would help her, inhabited the Canterbury Green Apartments.

When Foster reentered the car, he placed a black handgun on the dashboard and drove to Shoaff Park located in Fort Wayne, Allen County, Indiana. After seeing the handgun, S.J. was scared, and she began to cry. Again, S.J. informed Foster that she wanted to go home. Foster told S.J. to shut up. Then, Foster parked the car in a dark area of Shoaff Park surrounded by trees. He ordered that S.J. perform oral sex on him. When Foster threatened to use the handgun, S.J. performed oral sex on him as he requested. Afterwards, Foster instructed S.J. to pull her pants off and sit back in her seat. When S.J. complied, Foster lay on top of her, and engaged in sexual intercourse with her. S.J. testified that she cried and asked Foster to stop, but that he just told her to shut up and stop crying. Foster ejaculated on S.J.'s thigh and ordered her out of the car. S.J. testified that she refused to exit the car because she thought Foster would kill her if she exited the car. When S.J. refused to exit the car, Foster drove her back to her apartment. As Foster drove away, S.J. remembered the license plate number of the car Foster was driving.

As S.J. stood outside, she saw Fort Wayne Police Officer James King (Officer King) in a store parking lot. S.J. approached Officer King and told him that she had been raped. S.J. was hysterical and Officer King calmed her down before taking her statement. S.J. provided Officer King with a description of her attacker, and a description of the car he was driving with the license plate number. Officer King contacted the medics for S.J. S.J. was taken to the Sexual Assault Treatment Center and examined by Nurse Stephanie Good (Nurse Good). Nurse Good completed a rape kit for S.J. S.J. reported that her upper arms were tender. There were also fresh bruises on her lower extremities. In the meantime, Officer King ran the license plate number provided by S.J. and discovered that the car was registered to Shirley Foster, Foster's mother. S.J. later identified Foster from a photo array.

Indiana State Police DNA Analyst, Mary Reed [(DNA Analyst Reed)], performed a DNA analysis on several of the samples from S.J.'s rape kit. The swab taken from S.J.'s left thigh was consistent with Foster's DNA. [DNA Analyst Reed] testified that one African–American in fifty-eight billion would match the DNA found on S.J.'s left thigh and external genitalia. The vaginal and cervical swabs were consistent with S.J., Foster,

3

and an unknown third contributor. The swab taken from S.J.'s right groin area was also consistent with both S.J. and Foster.

On November 21, 2000, Fort Wayne Detective Hilda Williams (Detective Williams) interviewed Foster. Detective Williams testified that, at first, Foster denied that he picked up a girl during the early hours of November 18, 2000. However, Detective Williams testified that Foster later claimed that he picked up a girl, on November 18, 2000, and drove her one block up the street, but that no sexual contact occurred.

On February 16, 2001, the State of Indiana filed [an Information], charging Foster with Count I, rape, a Class A felony; Count II, criminal deviate conduct, a Class A felony; and Count III, criminal confinement, a Class B felony. On March 5, 2001, a warrant was issued for Foster's arrest. Foster was arrested pursuant to the warrant on March 7, 2001. On March 9, 2001, the trial court held Foster's initial hearing. On April 25, 2001, the State filed an additional [I]nformation alleging that Foster was a habitual offender, I.C. § 35-50-2-8.

*       *       *

A jury trial was held on April 23–24, 2002. On April 24, 2002, during a hearing held outside of the presence of the jury regarding final instructions, Foster objected to the State's tendered final instruction providing that a conviction can rest on the uncorroborated testimony of the victim, if believed beyond a reasonable doubt. The trial court gave the instruction over Foster's objection. On the same date, the jury found Foster guilty of rape, criminal deviate conduct, and criminal confinement. The jury also determined that Foster was a habitual offender.

On May 20, 2002, a sentencing hearing was held. The trial court sentenced Foster to the Indiana Department of Correction for a period of fifty (50) years on Count I, enhanced by a term of thirty (30) years due to his habitual offender status; fifty (50) years on Count II; and twenty (20) years on Count III, for an aggregate sentence of 150 years; each sentence to run consecutively to the others.

On appeal, Foster raised three issues with respect to his conviction and sentence: (1) whether the trial court committed reversible error when it instructed the jury that the sole and uncorroborated testimony of the alleged victim, if believed beyond a reasonable doubt, was sufficient to support a conviction; (2) whether the trial court properly denied

4

Foster's motions for discharge pursuant to Indiana Criminal Rule 4; and (3) whether Foster's 150-year sentence was proper. *Id.* at 1082. On September 17, 2003, we affirmed his conviction and sentence. *Id.*

On April 27, 2006, Foster filed a petition for post-conviction relief, which he subsequently amended on January 19, 2010. In his amended petition, Foster alleged that (1) his trial and appellate counselors had provided him with ineffective assistance; (2) the State had failed to disclose material exculpatory evidence; and (3) there existed newly discovered material and exculpatory evidence that warranted a new trial for Foster.[1] On August 27, 2010, the post-conviction court held an evidentiary hearing on Foster's petition, and on June 15, 2011, the post-conviction court denied the petition.

Foster now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

On appeal from the denial of post-conviction relief, a petitioner stands in the position of one appealing from a negative judgment. *Mauricio v. State,* 941 N.E.2d 497, 498 (Ind. 2011). In such cases, a petitioner must show that the evidence, taken as a whole, leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* We do not defer to the post-conviction court's legal conclusions, but we will reverse only on a showing of clear error. *Id.* Moreover, this court will only consider the probative evidence and all reasonable inferences therefrom

---

[1] We will not address the issue of whether the State failed to disclose material exculpatory evidence as Foster has not raised the issue on appeal.

that support the post-conviction court's determination. *Bigler v. State,* 732 N.E.2d 191, 194 (Ind. Ct. App. 2000)*, trans. denied.* We will not reweigh the evidence. *Id.*

## I. *Ineffective Assistance of Counsel*

Foster first contends that he received ineffective assistance from both his trial and appellate counsel. The effective assistance of counsel is a right that is guaranteed to all criminal defendants by the Sixth Amendment to the United States Constitution and Article I, section 13 of the Indiana Constitution. In order to establish ineffective assistance of counsel, a defendant must fulfill both prongs of the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied. Specht v. State,* 838 N.E.2d 1081, 1087 (Ind. Ct. App. 2005)*, trans. denied.* First, the defendant must prove that his or her counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and, second, that there is a reasonable probability that, but for counsel's failure to meet prevailing professional norms, the result of the proceeding would have been different. *Armstrong v. State,* 932 N.E.2d 1263, 1268 (Ind. Ct. App. 2010). "Because all criminal defense attorneys will not agree on the most effective way to represent a client, 'isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.' Thus, there is a strong presumption that counsel rendered adequate assistance and used reasonable professional judgment." *Id.* The presumption that an attorney has discharged his duty fully is overcome for purposes of post-conviction relief only by showing that the attorney's action or inaction made the

6

proceedings a mockery of justice and shocking to the conscience of the court. *Whitlock v. State,* 456 N.E.2d 717, 718 (Ind. 1983).

## A. *Trial Counsel*

According to Foster, his trial counsel provided ineffective assistance in four respects: counsel failed to (1) investigate the DNA of the unknown person found during S.J.'s examination; (2) object to S.J.'s testimony that she was not sure whether Foster was the father of her child; (3) move for a judgment on the evidence at the end of the State's case; and (4) object when the trial court submitted *ex parte* responses to jury questions. We will address each of these arguments individually.

### 1. *Failure to Investigate*

As stated above, DNA Analyst Reed performed a DNA analysis on several of the samples from S.J.'s rape kit. The vaginal and cervical swabs were consistent with S.J., Foster, and an unknown third contributor. In a deposition taken before trial by a prior counsel, S.J. indicated that she thought the father of her child might be a man named Ben Spencer, Jr. (Spencer). Then, at trial she indicated that she had engaged in sexual intercourse with her boyfriend, whom she identified as Robert, shortly prior to meeting Foster. She also indicated at trial that she was on her way to visit another man, Darrell Masterson (Masterson), at a pool hall when she met Foster on the street. Later in the trial, S.J. testified that she had realized that she had engaged in sexual intercourse with Spencer prior to meeting Foster, as Spencer was her boyfriend at the time rather than

7

Robert.  Post-trial DNA testing indicated that a man with the last name of Pippin was the father of S.J.'s child.

On appeal, Foster argues that his trial counsel provided ineffective assistance because counsel failed to investigate the identity of this unknown contributor of DNA found during S.J.'s exam.  According to Foster, knowledge of the unknown person could have allowed him to impeach S.J.'s testimony.  Also, one of his trial counsel's theories of defense was that S.J. was a prostitute or promiscuous, and Foster asserts that knowledge of the identity of the unknown third person could have bolstered this defense.

We acknowledge that the failure to conduct an investigation can constitute ineffective assistance of counsel.  *See McCarty v. State,* 802 N.E.2d 959 (Ind. Ct. App. 2004), *trans. denied.*  However, when deciding a claim of ineffective assistance of counsel for failure to investigate, we apply a great deal of deference to counsel's judgments.  *Parish v. State,* 838 N.E.2d 495, 500 (Ind. Ct. App. 2005), *reh'g denied.*  We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client; therefore, we will assume that counsel performed adequately and we will defer to counsel's strategic and tactical decisions.  *Mallory v. State,* 954 N.E.2d 933, 935 (Ind. Ct. App. 2011).  Moreover, many failures to investigate require going beyond the trial record to show what the investigation, if undertaken, would have produced.  *Slusher v. State,* 823 N.E.2d 1219, 1223 (Ind. Ct. App. 2005).  This is necessary because the success on the prejudice prong

8

of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result.  *Id.*

At the post-conviction hearing, Foster's trial counsel admitted that he did not recall making any efforts to identify the unknown third contributor of the DNA found on S.J.  However, the following exhange occurred at the post-conviction hearing:

[STATE]:  Apparently [there] was an unknown individual and the question I have is, like either it could've been some information that would have benefitted [Foster's] case like well it was my boyfriend and she admitted she had sex with her boyfriend, or it would've been someone else which according to your theory would've been beneficial to your case cause it would've shown she was having sex with more and more people.  Did you have any reason to find out which of those it was to the best of your recollection?

[TRIAL COUNSEL]:  Well it was either the boyfriend or an unknown individual so how would you find out anything different[?] . . . .

*        *        *

[STATE]:  So it sounds like there was nothing that would've been beneficial to your case as far as you can recall in either event, find out that it was the boyfriend or that it was someone else.

[TRIAL COUNSEL]:  Well here's the situation.  You've got the identity of an unknown individual and perhaps it was the boyfriend so what do you have with that[?]  Well the jury recognizes that we have a number of men having sex with this lady.  The issue is whether it's consensual or whether it was with a gun that was never found and that type of thing.  So for example, well and hypothetically even assuming we could find the unknown individual[,] what would, what relevance or benefit, he could say something he could help us or hurt us, we don't know.  Or, so I, in trying to answer your question I believe at the time all, that this was coming into play it is a matter of trial strategy with the jury, it was beneficial for the jury to understand that she was sexually active and that she had sperm and she didn't know who[se] it was.

9

(Post-Conviction Transcript pp. 34-36).[2]  We agree with Foster's trial counsel that his failure to investigate was a reasonable trial strategy.  As trial counsel stated at the post-conviction court hearing, his defense was that S.J. was promiscuous and that, as a result, her intercourse with Foster was consensual.  It is speculative to argue that proving the identity of the unknown person would have bolstered Foster's defense because it is possible that the unknown person was S.J.'s boyfriend, as she testified, which to the contrary would have bolstered her story.  Instead, maintaining the anonymity of the unknown third contributor allowed the jury to infer that, as trial counsel stated, S.J. was so sexually active that she did not know the identity of the third contributor.  Accordingly, we conclude that Foster's trial counsel did not deny him effective assistance by failing to investigate the identity of the unknown contributor.

## 2.  *Failure to Object to Testimony*

In a similar vein, Foster argues that his trial counsel provided ineffective assistance when he failed to object to S.J.'s testimony that "I don't even know if this man is the father of my son."  (Trial Tr. p. 294).  We conclude that, as above, this was a reasonable trial strategy.  At the post-conviction hearing, Foster's trial counsel explained that "first of all, if I would've objected to it that would've highlighted the jury's attention to that response.  Secondly it, I don't even know if this is the father of my child, well, that

---

[2] Throughout the remainder of this Opinion, we will refer to the trial transcript as "Trial Tr." and the post-conviction hearing transcript as "P-C Tr."

certainly told the jury she's out having sex with . . . many other men. . . . I mean, that sort of told me, hey I'm a loose woman[, which] went to our defense." (P-C Tr. pp. 26-27).

We have previously held that a decision not to draw the jury's attention to undesirable testimony may be a reasonable trial strategy. *See Stevens v. State,* 770 N.E.2d 739, 752 (Ind. 2002), *cert. denied.*, 128 S.Ct. 2423 (2008). In addition, we find that S.J.'s testimony reasonably supported the defense's strategy of demonstrating to the jury that S.J. had multiple sexual partners. Accordingly, we conclude that Foster's counsel's failure to object did not deny Foster the effective assistance of counsel.

3. *Failure to Timely Move for a Judgment on the Evidence*

Next, Foster claims that his trial counsel provided him with ineffective assistance because his counsel failed to make a timely motion for judgment on the evidence. Under Ind. Trial Rule 56, "[W]here all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon nothwithstanding a verdict." Among other times, a party may move for such a judgment on the evidence "after another party carrying the burden of proof or of going forward with the evidence upon any one or more issues has completed presentation of his evidence thereon." T.R.56(1),-(3). Foster's counsel made such a motion at the sentencing hearing, but Foster claims that he should have made the motion at the close of the State's case instead. Specifically, Foster argues that because evidence

11

of a gun was never recovered and there was no DNA evidence of oral sex, the trial court would have granted a motion after the State presented its evidence.

In support of his argument, Foster cites *Williams v. State,* 748 N.E.2d 887 (Ind. Ct. App. 2001), *reh'g denied.* In *Williams,* Williams' trial counsel failed to move for a judgment on the evidence as to Williams' charges and failed to challenge the sufficiency of the evidence to support Williams' convictions on appeal. *Id.* at 891. Ultimately, we noted that the performance of Williams' counsel fell below an objective standard of reasonableness as determined by prevailing professional norms because there was insufficient evidence to support the charges, and counsel was unable to provide a reason for his failure to raise the issue. *Id.* at 895.

However, we note several distinguishing factors between *Williams* and the case at hand. First, Williams' counsel did not move for a judgment on the evidence at any point during Williams' trial. *Id.* In the instant case, Foster's counsel did move for a judgment on the evidence, although it was at sentencing rather than at the close of the State's case. Also, contrary to Foster's assertions, evidence of a gun and DNA evidence that Foster forced S.J. to perform oral sex were not necessary to support his charges. We have recognized that the uncorroborated testimony of a rape victim is sufficient evidence to sustain a rape conviction on appeal, and S.J. testified that Foster placed a gun on the dash board of her car and forced her to perform oral sex. *Ellyson v. State,* 603 N.E.2d 1369, 1374 (Ind. Ct. App. 1992). Thus, it was not dispositive that the investigators never recovered a gun or DNA evidence that Foster forced S.J. to perform oral sex. As Foster

12

does not otherwise dispute the sufficiency of the State's evidence, we conclude that a motion for a judgment on the evidence would not have been successful at the end of the State's case. Thus, Foster's counsel did not provide ineffective assistance in refraining from moving for a judgment on the evidence at that point in time.

### 4. *Failure to Object to Ex Parte Communication with the Jury*

Finally, Foster argues that his trial counsel should have objected when the trial court engaged in *ex parte* communication with the jury without notifying counsel or Foster. After retiring to deliberate, the jury sent the trial court a question regarding S.J.'s testimony. The trial court responded: "please rely on your memories or your notes of the testimony . . . ." (Trial Tr. p. 499). The trial court later informed Foster's counsel of the question and counsel indicated that he agreed with the response the trial court had given the jury. Now, however, Foster argues that the trial court's failure to notify his counsel prior to communicating with the jury constituted a denial of counsel at a critical stage of the criminal proceedings and requires an automatic reversal.

The circumstances in the instant case are analogous to those in *Stephenson v. State*, 742 N.E.2d 463 (Ind. 2001), *cert. denied,* 128 S.Ct. 1871 (2008). In *Stephenson,* the jury sent a note to the trial court after the jury had retired for deliberations. In the note, the jury stated: "We would like to listen to [defendant's] tape 4810. Can we see the depositions of Brian M. & Dale Funk?" *Id.* at 492. In response, the trial court "advised the [b]ailiff to tell the jury that the court could not provide the items requested [by] them." *Id.* The trial court later told both parties of the *ex parte* communication. *Id.*

13

On appeal, the supreme court noted that Indiana case law recognizes state constitutional protection for a defendant's right to be present when a jury makes a request for any additional guidance during deliberations. *Id.* The supreme court also noted the procedural guidelines for such a situation, specifying that the trial court should:

> notify the parties so they may be present in court and informed of the court's proposed response to the jury *before* the judge ever communicates with the jury. When this procedure is not followed, it is an *ex parte* communication and such communications between the judge and the jury without informing the defendant are forbidden. However, although an *ex parte* communication creates a presumption of error, such presumption is rebuttable and does not constitute *per se* grounds for reversal. When a trial judge responds to the jury's request by denying it, any inference of prejudice is rebutted and any error deemed harmless.

*Id.* The supreme court ultimately held that even though the trial court had failed to notify the parties or counsel before responding to the jury, the error was harmless because the trial court merely denied the jury's request. *Id.*

Here, almost exactly the same course of events occurred. The jury sent the trial court a question regarding the testimony, and the trial court refused to answer the question, merely telling the jury members to rely on their memories and notes. Foster's trial counsel agreed that he would have recommended the same response if the trial court had notified him before it sent its note to the jury. In light of these factors and *Stephenson,* we conclude that the trial court's communication was a harmless error, and

14

Foster's counsel therefore did not provide ineffective assistance in declining to object to the *ex parte* communication.[3]

## B. *Appellate Counsel*

Next, Foster claims that he received ineffective assistance from his appellate counsel because his counsel did not raise the issue of his rights under the Supreme Court of the United States' decision in *Blakely v. Washington,* 594 U.S. 296 (2004), *reh'g denied.* In 1977, the Indiana Legislature adopted a sentencing scheme that included fixed term presumptive sentences, as well as upper and lower limits, for each Class of felonies. *Anglemyer v. State,* 868 N.E.2d 482, 485-86 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007). When a trial court deviated from the fixed presumptive sentence, it was required to "(1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance ha[d] been determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of circumstances." *Id.* at 486 (quoting *Prickett v. State,* 856 N.E.2d 1203, 1207 (Ind. 2006)).

In 2004, however, the Supreme Court decided *Blakely,* in which it held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum sentence must be submitted to a jury and proven beyond a reasonable doubt." *Id.* at 301. The Supreme Court further explained that the relevant "statutory maximum" for *Blakely* purposes is "not the maximum sentence [the trial court]

---

[3] Foster also alleges that even if the above actions did not amount to ineffective assistance of counsel individually, Foster was prejudiced by their cumulative effect. As we have not held that any of Foster's counsel's actions were prejudicial, we do not need to address this argument.

may impose after finding additional facts, but the maximum [it] may impose *without* any additional findings." *Id.* at 303-04.

In 2005, our supreme court clarified *Blakely*'s application to Indiana's presumptive sentencing scheme in *Smylie* and held that Indiana's scheme violated the Sixth Amendment of the United States Constitution because it mandated both a fixed term and permitted judicial discretion in finding aggravating or mitigating circumstances. *Smylie v. State,* 823 N.E.2d 679, 685 (Ind. 2005), *cert. denied*, 546 U.S. 976, 126 S.Ct. 545, 163 L.E.2d 459 (2005). The *Smiley* court interpreted the "statutory maximum" for *Blakely* purposes as the statutory presumptive sentence. *Id.* at 684. Thus, any aggravating circumstances used to enhance a circumstance beyond the presumptive sentence had to be found by a jury beyond a reasonable doubt. *Id.* at 686.

In response to *Blakely* and *Smylie*, the legislature revised Indiana's sentencing statutes in 2005 to provide for advisory sentences rather than presumptive sentences. *Anglemyer*, 868 N.E.2d at 487-88. However, the prior presumptive scheme applies in this case, as Foster committed his offenses in 2000, prior to the legislative revisions. *See Gutermuth v. State,* 868 N.E.2d 427, 431 n. 4 (Ind. 2007) (declaring that the sentencing statute in effect at the time a crime is committed governs the sentence for that crime). At the time of Foster's offenses, the presumptive sentence for a Class A felony was thirty years, with not more than twenty years added for aggravating circumstances and not more than ten years subtracted for mitigating circumstances. I.C. § 35-50-2-4 (1998). The presumptive sentence for a Class B felony was ten years, with not more than ten years

16

added for aggravating circumstances and not more than four years subtracted for mitigating circumstances. I.C. § 35-50-2-5 (1998). The maximum Foster could receive as an habitual offender was thirty years. I.C. § 35-50-2-8(e) (1998). As Foster was sentenced to 50 years for each of his Class A felonies, as well as twenty years for his Class B felony, he received the maximum sentence on each offense—well above the presumptive prescribed by statute.

Here, Foster's appellate counsel filed an appellant's brief in March of 2003, and this court issued its decision affirming Foster's conviction and sentence on September 17, 2003. On April 12, 2004, our supreme court denied transfer. Subsequently, on April 24, 2004, the Supreme Court decided *Blakely*. *See Blakely*, 594 U.S. 296. Foster now argues that his case was not final on direct review when the Supreme Court decided *Blakely* and, as a result, his appellate counsel was ineffective for failing to raise a *Blakely* claim.

We analyze an ineffective assistance of appellate counsel claim similarly to an ineffective assistance of trial counsel claim. *Bieghler v. State,* 690 N.E.2d 188, 192 (Ind. 1997), *cert. denied,* 119 S.Ct. 550 (1998). First, we require the defendant or petitioner to show that, in light of all of the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance. *Id.* at 193. Then, we require the defendant or petitioner to show adverse prejudice as a result of the deficient performance. *Id.* Our supreme court has recognized three basic categories of alleged

ineffectiveness of appellate counsel: (1) denying access to an appeal; (2) failing to raise issues; and (3) failing to present issues competently. *Id.* at 193-94.

In a claim that appellate counsel provided ineffective assistance regarding the selection and presentation of issues, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Ben-Yisrayl v. State,* 738 N.E.2d 253, 2060-61 (Ind. 2000), *cert. denied,* 122 S.Ct. 1178 (2002). A defendant may establish that his appellate counsel's performance was deficient where counsel failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision. *Id.* In making this determination, the reviewing court considers the information available in the trial record or otherwise known to appellate counsel. *Id.* at 261. Only the precedent available to appellate counsel at the time of the direct appeal is relevant to our determination of whether counsel was ineffective. *Donnegan v. State,* 889 N.E.2d 886, 893 (Ind. Ct. App. 2008), *trans. denied.* This is because "[a]ppellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in the existing law." *Id.*

We agree with Foster that his case was not final on direct review when the Supreme Court decided *Blakely* and that *Blakely* therefore applied to him retroactively. It has been firmly established that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past." *Smylie,* 823 N.E.2d at 687. In *Smylie*, our supreme court agreed that *Blakely*

18

constituted a new rule for the purposes of retroactivity. *Id.* Further, the United States Supreme Court has held that a case is "final" when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith v. Kentucky,* 479 U.S. 314, 321 n.6 (1987). A petition for a writ of certiorari must be filed within 90 days after entry of judgment in a state court of last resort. United States Supreme Court Rule 13. As Foster's time to petition for a writ of certiorari had not elapsed when the Supreme Court decided *Blakely*, his case was not final, and thus the *Blakely* holding applied to him retroactively.

Nevertheless, we have previously declined to find ineffective assistance of counsel for a counsel's failure to raise a *Blakely* claim under such circumstances. In *Donnegan,* we issued our opinion on June 14, 2004, and the supreme court denied Donnegan's petition to transfer on August 26, 2004, almost two months after the *Blakely* decision. *Donnegan*, 889 N.E.2d at 892. In his petition for post-conviction relief, Donnegan argued that his appellate counsel had been ineffective for failing to file an amended petition for transfer to our supreme court. *Id.* at 892. The post-conviction court denied his petition, and on appeal we affirmed the post-conviction court's decision. *Id.* Our reasoning was that, "When Donnegan filed his petition to transfer, [] the general rule was that an issue could not be raised for the first time in a petition to transfer. Furthermore, in *Carson v. State,* 813 N.E.2d 1187, 1188-89 (Ind. Ct. App. 2004), decided August 20, 2004, this court determined that Carson waived review of any argument under *Blakely*

where Carson raised the issue for the first time in his petition for rehearing." *Id.* at 893. We also noted that it was not until the *Smylie* decision on March 9, 2005, that the supreme court clarified that it would apply a liberal approach in determining whether a defendant had preserved a *Blakely* claim for appeal. *See id.* As a result, we concluded that, because only the precedent available to counsel at the time of the direct appeal is relevant to our determination of whether counsel is ineffective, Donnegan's counsel was not ineffective for failing to anticipate a change in the rules governing issues raised for the first time in a petition to transfer. *Id.*

Likewise, we also note that it was not until November 9, 2005, that our supreme court specifically clarified in *Kincaid v. State,* 837 N.E.2d 1008, 1010 (Ind. 2005), that any appellant who filed his or her initial brief prior to *Smylie* and failed to raise a *Blakely* claim, but nonetheless challenged his or her sentence in some form, could raise a *Blakely* claim by way of amendment, petition for rehearing, or petition for transfer. *Kendall v. State,* 886 N.E.2d 48, 54-55 (Ind. Ct. App. 2008), *trans. denied.* In *Kendall*, we cited this *Kincaid* decision as a reason for declining to find ineffective assistance of counsel when Kincaid's counsel failed to raise a *Blakely* claim in a petition for transfer. *Id.* at 51. We also noted that "[p]articularly in the case of *Blakely*, great confusion reigned for some time following the opinion. The *Smylie* court recognized the confusion that ensued in Footnote 12, stating, in part: 'That so many states are wrestling with the meaning of *Blakely* is further evidence of its unpredictability and a further indication that reasonable lawyers would not have known of the outcome.'" *Id.* at 52.

We find that the same reasoning applies in the instant case. Although Foster's counsel had the opportunity to raise *Blakely* in a petition for writ of certiorari because Foster's case was not yet final, he could not have been able to predict that it was possible to raise the issue for the first time in such a petition. Accordingly, we conclude that Foster's appellate counsel did not provide him with ineffective assistance.

### III. *Newly Discovered Evidence*

Finally, Foster argues that the post-conviction court erred in denying his petition for post-conviction relief in light of his newly discovered evidence that he is not the father of S.J.'s baby. At the post-conviction hearing, Foster offered documents from an Illinois CHINS proceeding that contained a handwritten note stating that Foster was not the father of S.J.'s child. Foster attempted to admit the documents to impeach S.J.'s testimony that she was not sure whether Foster was the father of her baby, but the post-conviction court denied his request.

Our supreme court has enunciated nine criteria for admission of newly-discovered evidence.

> [N]ew evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

*Taylor v. State,* 840 N.E.2d 324, 329-30 (Ind. 2006). To prevail upon appeal, the petitioner must demonstrate that the newly discovered evidence met all nine of these

21

criteria and that the trial court abused its discretion by failing to find so. *Powell v. State,* 714 N.E.2d 624, 627 (Ind. 1999).

Foster does not present evidence with respect to any of these criteria. His only argument is that "S.J.'s testimony was so prejudicial as to deny Foster a fair trial. [These documents] should have been admitted at the post-conviction hearing as they demonstrate that her testimony was demonstrably false." (Appellant's Br. p. 13). This argument supports the post-conviction court's conclusion that the evidence was "merely impeaching" and was therefore inappropriate under criteria number four. In addition, as the post-conviction court also concluded, this is a case where there was significant DNA evidence and eyewitness testimony supporting Foster's convictions. The paternity of S.J.'s child does not mitigate that evidence and is not an element of Foster's crimes, so it is not probable that the newly discovered evidence would produce a different result at trial. Accordingly, we conclude that the post-conviction court did not err in refusing to admit the CHINS documents as newly discovered evidence and did not err in denying Foster's petition despite this evidence.

## CONCLUSION

Based on the foregoing, we conclude that: (1) the post-conviction court did not err in finding that Foster received the effective assistance of counsel; and (2) the post-conviction court did not err in denying Foster's petition for post-conviction relief in light of newly discovered evidence.

Affirmed.

22

NAJAM, J. and DARDEN, J. concur