Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**MARIO JOVEN**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

FILED
Aug 21 2012, 9:23 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL COCHRAN,                     )
                                     )
    Appellant-Petitioner,            )
                                     )
       vs.                        )    No. 04A03-1201-PC-20
                                     )
STATE OF INDIANA,                    )
                                     )
    Appellee-Respondent.             )

APPEAL FROM THE BENTON CIRCUIT COURT
The Honorable Rex W. Kepner, Judge
Cause No. 04C01-0711-PC-226

**August 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Michael Cochran appeals from the denial of his petition for post-conviction relief, claiming that his guilty plea to a habitual offender allegation must be vacated because the trial court failed to advise him of his constitutional right against self-incrimination and his right to confront and cross-examine witnesses against him before he entered his plea. Because Cochran failed to establish by a preponderance of the evidence that he did not know that he was waiving those rights before he entered his plea, we affirm.

## Facts and Procedural History

On January 3, 2005, in cause number 04C01-0501-FC-4 ("Cause 4"), the State charged Cochran with four counts of class C felony forgery and one count of class D felony attempted obstruction of justice. The State also sought to have Cochran sentenced as a

habitual offender pursuant to Indiana Code Section 35-50-2-8.[1]  As required by Indiana law,

Cochran's trial was to be a bifurcated proceeding:  the jury would first determine his guilt on

the forgery and attempted obstruction counts, and then it would determine whether he had

accumulated two prior unrelated felony convictions for habitual offender sentencing

purposes.

The first phase of Cochran's trial began on November 28, 2005, and lasted two days.

During jury deliberations, the trial court held an evidentiary hearing regarding Cochran's

---

[1] When Cochran committed his crimes in 2004, Indiana Code Section 35-50-2-8 read in pertinent part as follows:

> (a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.
>
> ….
>
> (c) A person has accumulated two (2) prior unrelated felony convictions for purposes of this section only if:
> > (1) the second prior unrelated felony conviction was committed after sentencing for the first prior unrelated felony conviction; and
> > (2) the offense for which the state seeks to have the person sentenced as a habitual offender was committed after sentencing for the second prior unrelated felony conviction.
>
> ….
>
> (f) If the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing. If the trial was to the court or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing under IC 35-38-1-3.
>
> (g) A person is a habitual offender if the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions.
>
> (h) The court shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the presumptive sentence for the underlying offense nor more than three (3) times the presumptive sentence for the underlying offense.  However, the additional sentence may not exceed thirty (30) years.

alleged violation of probation in cause number 04C01-0405-FA-173 ("Cause 173") and took the matter under advisement. The jury found Cochran guilty on three of the forgery counts and the attempted obstruction count. After the verdicts were announced, Cochran's counsel informed the trial court that Cochran had "agreed to admit to" the habitual offender allegation. Trial Tr. vol. 2 at 76. The trial court asked Cochran the following questions:

> **COURT:** …. Mr. Cochran, is it your desire to in fact plead guilty or admit the habitual enhancement, sir?
>
> **MR. COCHRAN:** Yes.
>
> **COURT:** And you are waiving the right to have a jury decide the habitual offender enhancement or the bifurcated phase?
>
> **MR. COCHRAN:** Yes.
>
> **COURT:** We have a jury here and you understand that you have a right … to the jury and have them decide whether or not you uh, are a habitual criminal. Do you understand that, sir?
>
> **MR. COCHRAN:** Yes.
>
> **COURT:** And you understand you're waiving the right to do that?
>
> **MR. COCHRAN:** Yes.
>
> **COURT:** You have discussed that at least to some extent with Mr. Howard, your attorney, sir?
>
> **MR. COCHRAN:** Yes.
>
> **COURT:** You understand that the jury would also have to find beyond a reasonable doubt that you have at least those two prior felony convictions?
>
> **MR. COCHRAN:** Yes.

*Id*. at 78-79.

4

The court then informed Cochran about the habitual offender sentencing ramifications and asked if he had "any questions about the possible penalties" or "any questions about the rights [he was] waiving by admitting to the habitual offender enhancement," to which Cochran replied, "Nope." *Id*. at 84. The court then placed Cochran under oath, and the prosecutor elicited a "factual basis for the habitual offender enhancement." *Id*. at 85. Cochran admitted to having two prior unrelated felony convictions and to being a habitual offender. The prosecutor then offered into evidence certified copies of documents regarding those prior convictions, which the trial court admitted without objection "for purposes of establishing [a] factual basis." *Id*. at 88. The trial court then said,

> Okay, Court will find that [Cochran] has provided an adequate factual basis, that he has voluntarily waived uh, his right to have the jury decide the habitual offender enhancement portion of his trial … Mr. Cochran decided to admit or plead guilty to [the] habitual offender enhancement rather than putting that in front of the jury.

*Id*. at 90. The court did not formally accept Cochran's plea, however. The court then found that Cochran had violated his probation in Cause 173 and set a hearing for sentencing in Causes 4 and 173.

At that hearing, on January 10, 2006, the parties submitted a written plea agreement that included sentencing provisions for Causes 4 and 173 and also disposed of a third case, cause number 04C01-0503-FB-79 ("Cause 79"), that had been set for trial in February 2006. The court questioned Cochran in pertinent part as follows:

> **COURT:** With respect to this new case that [you're] pleading guilty to as a part of this plea agreement, referring to [Cause 79], the case containing 6 Counts, I guess 7 Counts and then Habitual Offender Enhancement, all file marked December 1, 2005, I am going to make sure that you understand the

5

rights that you are waiving by pleading guilty to Count 2 [class C felony prisoner possessing a deadly weapon], 3 [class D felony battery of a police officer] and the Habitual Offender. Do you understand, sir?

**MR. COCHRAN:** Yes.

**COURT:** By pleading guilty you are giving up the right to a public and speedy trial by jury or trial to the Court, do you understand that?

**MR. COCHRAN:** Yep.

**COURT:** The right to confront and cross examine uh, cross examine the witnesses, State's witnesses, do you understand that?

**MR. COCHRAN:** Yes.

**COURT:** The right to make the State prove the case beyond a reasonable doubt at trial, do you understand that?

**MR. COCHRAN:** Yes.

**COURT:** You are giving up the right to have subpoenas issued through the Clerk's Office to make others come in here and testify and that would be at no expense to you, do you understand that?

**MR. COCHRAN:** Yes.

**COURT:** You also could not be compelled to be forced to testify at trial, do you understand that, sir?

**MR. COCHRAN:** Yea.

….

**COURT:** Any questions about any of those rights that you're giving up or waiving by pleading guilty?

**MR. COCHRAN:** Nope.

6

*Id.* at 103-04. The prosecutor then elicited a factual basis for Cochran's plea in Cause 79. Afterward, the trial court announced that it would "accept the Plea Agreement" and "impose sentence and disposition as outlined in the Plea Agreement." *Id.* at 114.

In November 2007, Cochran filed a pro se petition for post-conviction relief, which was amended twice by counsel. The second amended petition reads in pertinent part as follows:

> 9(a): A defendant must be advised of three federal constitutional rights which the record must disclose that the defendant knew he was waiving before a reviewing court can affirm a finding that the plea was voluntary and intelligent: the right to a trial by jury, the right to confront one's accusers, and the right against self-incrimination. *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). *See also White v. State*, 497 N.E.2d 893, 897 (Ind. 1986). When Cochran pled guilty to the habitual offender [allegation in Cause 4], the trial court failed to advise him of all his *Boykin* rights. Specifically, the trial court did not advise Cochran of his right against self-incrimination and his right to confront his accusers. The absence of proper advisements constitutes error and requires Cochran's guilty plea to be vacated.

Appellant's App. at 61-62.

The post-conviction court held a hearing on the second amended petition and denied it on December 27, 2011, finding that Cochran "was aware of his rights prior to his guilty plea to the Habitual Offender Enhancement, even if no advi[c]e of rights was given immediately before his plea." *Id.* at 70. This appeal ensued.

### Discussion and Decision

"A post-conviction petitioner bears the burden of establishing his claims by a preponderance of the evidence." *Donnegan v. State*, 889 N.E.2d 886, 891 (Ind. Ct. App. 2008) (citing, inter alia, Ind. Post-Conviction Rule 1(5)), *trans. denied*.

7

When reviewing the denial of a petition for post-conviction relief, we will neither reweigh the evidence nor judge the credibility of the witness. Thus, to prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. We will disturb the post-conviction court's decision only if the evidence is without conflict and leads to but one conclusion and the post-conviction court has reached the opposite conclusion.

*Id*. (citations omitted).

The Indiana Supreme Court has explained,

According to *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), a trial court must be satisfied that an accused is aware of his right against self-incrimination, his right to trial by jury, and his right to confront his accusers before accepting a guilty plea. *Id*. at 243, 89 S. Ct. 1709. However, *Boykin* "does not require that the record of the guilty plea proceeding show that the accused was formally advised that entry of his guilty plea waives certain constitutional rights[,]" nor does *Boykin* require that the record contain a formal waiver of these rights by the accused. *State v. Eiland*, 707 N.E.2d 314, 318 (Ind. Ct. App. 1999) (quotation omitted), *reh'g denied*, *opinion expressly adopted by* 723 N.E.2d 863 (Ind. 2000); *Barron v. State*, 164 Ind. App. 638, 330 N.E.2d 141, 144 (1975). Rather, *Boykin* only requires a conviction to be vacated if the defendant did not know or was not advised at the time of his plea that he was waiving his *Boykin* rights. *Davis v. State*, 675 N.E.2d 1097, 1103 (Ind. 1996); *see also United States ex rel. Miller v. McGinnis*, 774 F.2d 819, 824 (7th Cir. 1985) (holding that a defendant must be "fully cognizant" that he is waiving his *Boykin* rights by pleading guilty).

*Dewitt v. State*, 755 N.E.2d 167, 171 (Ind. 2001).

Cochran argues that the trial court's failure to advise him of his *Boykin* self-incrimination and confrontation rights before he pled guilty to the habitual offender allegation requires that his plea be vacated.[2] We disagree. We first observe that Cochran

---

[2] To the extent Cochran also argues that the trial court failed to ascertain that he understood those rights, we agree with the State that Cochran has waived this argument because he failed to raise it in his petition for post-conviction relief. *See Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal.").

cites no authority for the proposition that *Boykin* applies to habitual offender allegations, as opposed to actual crimes such as the death-eligible robberies at issue in *Boykin*. *Cf. Harris v. State*, 964 N.E.2d 920, 927 (Ind. Ct. App. 2012) ("It is well settled that a habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence. Rather, a habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony.") (citation omitted), *trans. denied*; *Hopkins v. State*, 889 N.E.2d 314, 317 (Ind. 2008) (observing that such was an open question not addressed by the parties in that case).[3] Assuming for argument's sake that it does, we also observe that Cochran pled guilty "in the midst of a jury trial, where the *Boykin* rights are on display for all to see." *Hopkins*, 889 N.E.2d at 317. Moreover, Cochran admitted during his jury trial that he had pled guilty on at least one and perhaps two prior occasions. Trial Tr. vol. 1 at 210, 216. Given all this, it cannot seriously be argued, let alone established by a preponderance of the evidence, that Cochran did not know that he was waiving all three *Boykin* rights when he entered his plea. Therefore, we affirm the denial of his petition for post-conviction relief.[4]

---

[3] In *Hopkins*, the issue was whether the defendant pled guilty to the habitual offender allegation or merely stipulated to it and thus was not entitled to the protections of *Boykin*. 889 N.E.2d at 317. Although a colorable argument could be made that Cochran merely stipulated to the habitual offender allegation in this case, the State has made no such argument here. Consequently, for purposes of this appeal we presume that Cochran pled guilty to the allegation.

[4] The State observes that the trial court "did not accept the guilty plea and enter the convictions until after explicit advisements were acknowledged in the written guilty plea agreement and after the oral advisements at the sentencing hearing" and further observes that in *Dewitt*, our supreme court said that "the trial court's duty is to 'be satisfied that an accused is aware of his right[s] … **before accepting a guilty plea.**'" Appellee's Br. at 9 (quoting *Dewitt*, 755 N.E.2d at 171) (emphasis Appellee's). Although both *Dewitt* and *Boykin* use this terminology, this Court has said that "in determining whether a defendant was properly informed of his rights, formal acceptance of the guilty plea is not the proper focus for determining the trial court's authority to accept that plea. Instead, the proper focus should be on the time the defendant actually pled guilty." *Fisher v. State*, 878 N.E.2d 457, 467 (Ind. Ct. App. 2007) (citation and quotation marks omitted), *trans. denied* (2008).

Affirmed.

RILEY, J., and BAILEY, J., concur.